550 So.2d 290 (1989)
HAMILTON MEDICAL GROUP, Plaintiff-Appellee,
v.
OCHSNER HEALTH PLAN d/b/a Hamilton Health Plan, et al., Defendants-Appellants.
No. 89-407.
Court of Appeal of Louisiana, Third Circuit.
September 22, 1989.
*291 Perret, Doise, Daigle, Longman, Russo & Zaunbrecher, Douglas C. Longman, Jr., Lester J. Zaunbrecher, LaFayette, for plaintiff-appellee-mover.
Monroe & Lemann, Benj. R. Slater, Jr., Richmond M. Eustis, Gerard A. Bos, New Orleans, for defendants-appellants-respondents.
Before STOKER, KNOLL and KING, JJ.
KING, Judge.
Plaintiff-appellee, Hamilton Medical Group, moves to dismiss the appeal of defendants-appellants, Ochsner Health Plan d/b/a Hamilton Health Plan, Ochsner Service Corporation, Ochsner Clinic, and William H. Townsend, on the ground that appellants seek a review of an unappealable judgment, the denial of exceptions of improper venue and vagueness. Alternatively, appellee moves for an expedited hearing.
This Court on its own motion hereby converts defendants-appellants' appeal into a supervisory writ application and renders a decision on the merits for the following reasons.
A judgment that does not determine the merits but only preliminary matters is an interlocutory judgment. La.C.C.P. Art. 1841. An appeal can be taken from an interlocutory judgment which may cause irreparable injury. La.C.C.P. Art. 2083. A decision denying an exception of improper venue creates the possibility of irreparable injury because the appellate court, subsequent to a trial on the merits, has no practical means of correcting an incorrect ruling since the trial will have already taken place in an improper venue. In many instances, the trial will have been an absolute nullity since venue is also jurisdictional and may not be waived. La.C.C.P. Art. 44. For this reason, it has been recognized that the denial of an exception of improper venue is an appealable interlocutory judgment since it might cause irreparable injury. Herlitz Construction Company, Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981); Succession of Thompson v. Harrington, 489 So.2d 458 (La.App. 3rd Cir.1986). While we concede that there is authority for the proposition that an exception of improper venue can be appealed we do not believe that a mechanical application of this legal authority in this instance is logical or consistent with good judicial policy, or is fair. As the Fourth Circuit Court of Appeal stated in Laborde v. DeBlanc, 532 So.2d 829 (La.App. 4th Cir.1988):
"A denial of an exception of improper venue does not result in a final judgment, but rather is an interlocutory order. The proper remedy is therefore an application for a supervisory writ, not an appeal. Henry v. Ford Motor Co., Inc., *292 et al., 519 So.2d 845 (La.App. 4th Cir. 1988). In Henry, this court used a two-part test to determine if a writ will be granted in such a case: (1) if there is no remedy on appeal and (2) if the Relator will suffer irreparable harm if the writ is not granted. If the trial court incorrectly overrules an exception of venue and the case is tried in the wrong venue, then there exists no remedy to correct that fact on appeal. Thus, the Relator will suffer irreparable harm if the writ is not granted. Herlitz Const. Co., Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981); Lapeyrouse v. United Services Auto. Ass'n, 503 So.2d 627 (La.App. 4th Cir.1987). The practical result is that a writ must be granted to review the merits of any declinatory exception of venue, whether the exception is granted or denied. However unpalatable that is, it is preferable to the alternative review by appeal. Footnote one in Henry, supra, discussing the problems caused by footnote one in Herlitz, supra, is more explicit:
"1. Herlitz footnote one uses a denial of an exception of venue as an example. While the example is mere dicta, it exists as a persuasive argument in the absence of a clearer more definite statement by the Supreme Court specifying exceptions of venue. Thus, it has unfortunately led to a situation in which appeals are being routinely granted below for denials of exceptions of venue. Thus litigants can halt the orderly process of trial for a year by seeking appeals from denial of venue exceptions.... In Herlitz, the Supreme Court was properly annoyed with a mechanical application of a standard that resulted in erroneous denials of meritorious writ applications. Further, the appellate court in Herlitz was applying the wrong standard. The two-fold test recited by the appellate court in Herlitz is: (1) where there is palpable error in the ruling complained of and (2) only if irreparable injury will ensue. If the appellate court had applied the `where there is no remedy on appeal' prong of the test, then it would have seen that once the trial court overrules an exception of venue and the case is tried in the wrong venue, then there exists no remedy to correct that fact on appeal, hence a writ should be granted if the venue is wrong. The only result of Herlitz's footnote one is that it now takes over a year to do what once was done within a few days."
We believe it to be bad judicial policy to make litigants wait for a long period of time for disposition of a pending appeal because of the docketing delays for appellate hearings present in some of our Louisiana appellate courts, such as the delay in the Third Circuit of approximately fifteen months from the date the appeal is docketed, and to then have the appellate court also find that the exception of improper venue had no merit. This could encourage a defendant to file a meritless exception of improper venue which the trial court would overrule, to then appeal the trial court's ruling, only to then have the appellate court ultimately sustain the trial court's ruling. Such action by a defendant could delay discovery and trial of a suit for over a year and a half. The result of this mechanical application of the law would result in defendant's obtaining an undue delay of trial of a suit by legal technicalities which would be the epitome of the expression "Justice delayed is Justice denied." For this reason, we chose, as the Fourth Circuit has done, to dismiss this appeal and then rule on the merits of the exceptions of improper venue and vagueness, since they have already been briefed, by considering the appeal as an application for supervisory writs under our supervisory authority as an appellate court. Laborde v. DeBlanc, supra; Henry v. Ford Motor Co., Inc., supra.

ON THE MERITS
Plaintiff filed the instant suit in Lafayette Parish, Louisiana. The defendants responded by filing the Dilatory Exceptions of Vagueness and of Improper Venue. After a hearing on these exceptions, the trial court overruled both exceptions. It is from *293 this ruling that defendants are seeking an appellate review.

Improper Venue
The plaintiff argues that the Ochsner Health Plan's office in Lafayette had supervision over the matters at issue in this suit, therefore, venue is proper under the provisions of La.C.C.P. Art. 77. The trial court agreed and denied the exception.
La.C.C.P. Art. 77 states as follows:
Art. 77. Action against person doing business in another parish
An action against a person having a business office or establishment in a parish other than that where he may be sued under Article 42, on a matter over which this office or establishment had supervision, may be brought in the parish where this office or establishment is located.
The record shows the facts established at the hearing on the exception to be as follows. In 1987 the Ochsner Health Plan, a health maintenance organization, decided to expand their business into the Lafayette area. In late 1987 Ochsner reached an agreement with the Hamilton Medical Group to extend its health maintenance services to the Lafayette area, and established the Hamilton Health Plan. While the Hamilton Health Plan was in operation from January 1, 1988, through December 31, 1988, Ochsner decided to open a local office in Lafayette Parish (hereinafter the office) to aid in administering it's program. They rented approximately 1600 square feet of office space and, at their peak, employed sixteen employees in Lafayette Parish. The employees included an Executive Director, a Marketing Director, a Member Services Director, and a Health Services Coordinator.
Mr. William Townsend, the President of the Ochsner Health Plan, described the duties of the Executive Director of the office as follows. His job was to implement decisions made by Ochsner. The Executive Director aided in providing member services such as answering members' questions on a day to day basis. He had very little authority to initiate decisions. The Executive Director was able to give projections as to the amount of money the Hamilton Medical Group was to receive as a capitation fee after consulting with the Ochsner financial office in New Orleans.
Mr. Townsend's testimony also revealed the following information about the functions of the Lafayette office. The Lafayette office was established to respond to and interact with people and members of the plan locally. The office was structured to answer questions and deal with complaints of members. The Lafayette office was supposed to work with the local physicians, the Hamilton Medical Group and staff. There were weekly meetings between the Hamilton Medical Group and employees of the office. The office did some local solicitation of groups to join the health plan. Most of the recruiting of personnel was by a team with members from the New Orleans, Baton Rouge, and Lafayette offices. Mr. Townsend had the final approval as to personnel. The financial accounting was conducted in New Orleans. All decisions as to rates were established in New Orleans.
Paul Landry, the Executive Director of the Hamilton Health Plan, stated his duties were to administer the Hamilton Health Plan locally in Lafayette, and to administer the day to day operations of the office according to the policy established in New Orleans. He supervised the local staff, the marketing, the budget, and the rendering of member and health services. He coordinated activities with the Hamilton Medical Group. This was the main purpose for having the office. He met with the Hamilton Medical Group twice weekly. Most of the checks paid to the medical group had his signature upon them. The exhibits in evidence reveal Mr. Landry once signed a check for $100,000, to the Hamilton Medical Group which amount represented the April capitation fees owed to plaintiff by defendants and was drawn on defendants account with a Lafayette bank.
In the present case the Hamilton Medical Group filed suit alleging a breach of contract on the part of Oschner Health Plan and sought an accounting of all funds and accounts administered by the defendant. *294 They alleged they did not receive all funds due on the monthly capitation fees.
The trial court found, from the evidence presented, that the Lafayette office had supervision over the matter sued upon by plaintiff and constituted a business office or establishment within the meaning of La.C.C.P. Art. 77. We agree. It is clear from the testimony of Mr. Landry that the Lafayette office was primarily established to coordinate the defendants' activities with the Hamilton Medical Group. These activities were governed by the contract between the two parties. The Lafayette office was established to administer or supervise the activities of the Hamilton Medical Group under the contract. Mr. Landry signed at least some of the monthly checks for capitation fees paid to the Hamilton Medical Group and the funds were drawn from the defendants Lafayette bank account. Therefore, the trial judge was correct in finding venue for this suit was proper in Lafayette Parish, Louisiana and in overruling defendants exception of venue.

Vagueness
Defendants also argues that the trial court erred in denying their exception of vagueness. Defendants asserts that the petition is vague in its references to a "verbal agreement" without alleging the terms, conditions and specifications of the contract. However, the petition is specific that Ochsner was to receive an administrative fee of 13% and Hamilton was to receive monthly capitation payments based on the number of members enrolled. The petition also alleges that the agreement obligated Ochsner to collect monthly premiums and that any member failing to pay by the 10th of the month should be terminated, and claims that defendants breached their obligations under the agreement.
We find the petition of the plaintiff was sufficient to place the defendants on notice of the nature of the facts sought to be proved so as to enable them to prepare their defense. See Anderson v. Lanier, 479 So.2d 667 (La.App. 3rd Cir.1985).
For these reasons we find no error in the trial court's rulings denying the defendant's exceptions of improper venue and vagueness. We therefore find no merit to the application of defendants-appellants-relators and remand this case to the trial court for further proceeding consistent with this opinion.
WRIT DENIED.
STOKER, J., concurs and assigns written reasons.
STOKER, Judge, concurring.
I concur in the action taken in this matter to treat the appeal as a supervisory writ application and to decide the merits on the basis of the record before us. I agree with the result, that is, to deny the writ which therefore affirms the trial court's overruling of the exceptions of improper venue and vagueness. In matters of this kind, I have been inclined to prefer to let them be treated as appeals which required them to take their place on the regular docket. In considering venue questions such as are before us, we retain flexibility. In converting an appeal of a venue ruling to a supervisory writ, we may still set the case down for a hearing and require briefing (and oral argument if justified). There might be a need to call for a full transcript of the record. We are not obligated to make an immediate decision. Consequently, the approach should be to handle any case based on its own facts, complexities and circumstances.