674 So.2d 1052 (1996)
Austin TUCKER & Beverly Tucker, Plaintiffs-Appellees,
v.
OCHSNER HEALTH PLAN, d/b/a Ochsner Preferred Choice, Defendant-Appellant.
No. 28318-CA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1996.
*1053 Monroe & Lemann by Perry R. Staub, Jr., New Orleans, for Defendant-Appellant.
Jack M. Bailey, Jr., Shreveport, for Plaintiffs-Appellees.
Before MARVIN, GASKINS and CARAWAY, JJ.
MARVIN, Chief Judge.
This appeal concerns whether Caddo Parish is the proper venue for an action against a Jefferson Parish health maintenance organization (HMO) under a group health care plan for reimbursement of medical expenses incurred outside of the HMO's geographical (New Orleans-Baton Rouge) "service area" by the plaintiff-plan member.
Overruling the HMO's venue exception, the trial court found that the action could be brought in Caddo Parish, where the plaintiff incurred the "damages" he seeks to recover from the HMO, both in tort and in contract, notwithstanding that the HMO's business office is located in Jefferson Parish. CCP Arts. 42, 74, 76.1.
We affirm the judgment for these reasons:

FACTS
The plaintiff, Austin Tucker, received extensive medical treatment in Caddo Parish for injuries he sustained there when he fell from a tree on June 6, 1994. Tucker's injury occurred shortly after he returned to Caddo Parish, where he and his wife are domiciled, from New Orleans, where Tucker temporarily resided to fill a one-year teaching position at a theological seminary. Tucker apparently began teaching at the seminary in August 1993 and completed his teaching duties in May 1994.
At the start of his seminary employment, Tucker enrolled in a health care plan offered by his employer under a group health services agreement with Ochsner Preferred Choice HMO, the trade name of a partnership, Ochsner Health Plan. The business was later incorporated as Ochsner/Sisters of Charity Health Plan, Inc. We refer to the HMO hereafter as OHP, the designation used in the group agreement.
OHP's principal business office is located in Jefferson Parish. Its geographical "service area" includes New Orleans and Baton Rouge. OHP does not have an office in Caddo Parish. The group health care plan, however, expressly "covers" certain medical expenses incurred outside of OHP's service area, as discussed infra.
*1054 Tucker brought his action against OHP in Caddo Parish, alleging that he has incurred over $200,000 in medical bills as a result of his injury, which left him partially paralyzed. Anticipating OHP's contention that Tucker's coverage under the group plan ended before his June 1994 injury, Tucker also alleged that he was covered under the plan until his one-year employment contract with the seminary ended in August of that year.
The merits of the coverage issue are yet pending in the trial court and are not before us in this appeal. At this juncture, we simply accept the allegation of coverage as true for purposes of discussing and resolving the venue issue. While references are made in the record to Tucker having separate actions against other defendants for either or both tort damages and workers' compensation benefits, OHP is the sole defendant in this action.

TRIAL COURT RULING
Excepting to venue in Caddo Parish, OHP asserted that the proper venue for the action was Jefferson Parish, the location of OHP's principal place of business as a partnership and of its registered corporate office. CCP Art. 42(2), (3). Tucker opposed the exception by advancing three alternative CCP provisions:
Art. 76, which generally allows an action on an insurance policy to be brought in the parish where the insured is domiciled or in the parish where the loss occurred. The article specifically states that an action "on a health and accident insurance policy" may be brought in the parish of the insured's domicile or in the parish where the accident or illness occurred.
Art. 76.1, which allows an action "on a contract" to be brought in the parish where the contract was executed or in the parish where any work or service was performed or was to be performed under the terms of the contract.
Art. 74, establishing venue for an action to recover "damages for an offense or quasi offense" in the parish where the wrongful conduct occurred, or in the parish where the damages were sustained.
The trial court overruled the exception, citing Arts. 76.1 and 74. This court denied supervisory review of the ruling without reaching the merits of the application. OHP then appealed the judgment, as authorized by Herlitz Const. Co. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981) and McInnis Bros. v. Peoples Water Service, 28,216 (La.App.2d Cir. 1/24/96), 666 So.2d 1323.

DISCUSSION
At the outset, we note that the longstanding jurisprudential deference to the "home base" venue provisions of CCP Art. 42, generally establishing the parish of the defendant's domicile as the proper venue in which to bring an action, and the corresponding strict or narrow construction of the codal "exceptions" to the Art. 42 "general rule," contained in Arts. 71-85, has been tempered somewhat in recent years. See Jordan v. Central Louisiana Electric Co., 95-1270 (La. 6/23/95), 656 So.2d 988, citing with approval the court's earlier construction of Arts. 71-85 as "alternative" or "supplemental" venue provisions to be applied as "part and parcel of the general venue rules set forth in Article 42." Jordan, supra, at p. 2, 656 So.2d at 989, citing Kellis v. Farber, 523 So.2d 843 (La. 1988). See also McInnis Bros. v. Peoples Water Service, supra.
As mentioned, the alternative venue provisions asserted by Tucker include Art. 76 (action on insurance policy), Art. 76.1 (action on a contract) and Art. 74 (action for tort damages).

Art. 76: Action on insurance policy
The trial court implicitly, and in our view correctly, determined that Tucker's action is not an action on an insurance policy, which, under Art. 76, may be brought where the loss occurred or where the insured is domiciled.
Notwithstanding that the entirety of LRS Title 22, which bears the heading "Insurance," is sometimes referred to as the "Insurance Code," we note that the legislature has used that name only for Chapter 1 of Title 22, the chapter dealing with traditional forms of insurance, such as life insurance and health and accident insurance. The provisions concerning HMOs appear in Chapter 2 *1055 of Title 22, the chapter entitled "Miscellaneous Provisions." The Health Maintenance Organization Act, LRS 22:2001-2027, was enacted in 1986 as Part XII of Chapter 2.
The legislature has defined a "health maintenance organization" as a domestic corporation
which undertakes to provide or arrange for the provision of basic health care services to enrollees in return for a prepaid charge. The health maintenance organization may also provide or arrange for the provision of other health care services to enrollees on a prepayment or other financial basis. Notwithstanding any laws, regulations, or definitions contained in any other section of Title 22 to the contrary, a health maintenance organization is deemed to be an insurer for the purposes of liquidation, conservation, rehabilitation, and/or receivership all as defined and set out within Title 22. A health maintenance organization shall not be considered an insurer for any other purpose.

§ 2002(7); our emphasis.[1]
The legislature's intention to treat HMOs as insurers only for selective and limited purposes is reiterated in the general definitions of the terms "insurance" and "insurer," contained in LRS 22:5(1)(a) and (2), respectively:
(1)(a) "Insurance" is a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies ...
(2) "Insurer" includes every person engaged in the business of making contracts of insurance, other than a fraternal benefit society ... A health maintenance organization is an insurer but only for the purposes enumerated in R.S. 22:2002(7). (Our emphasis.)
Procedurally, the term "insurance policy" as used in the Code of Civil Procedure means "all policies included within the definition in R.S. 22:5, and a life, or a health and accident policy, issued by a fraternal benefit society." CCP Art. 5251(7).
The legislature has not squarely addressed whether an HMO is to be treated as an insurer for purposes of venue under CCP Art. 76. The legislature, however, has expressly declared that an HMO is to be regarded as an insurer only for the limited purposes listed in LRS 22:2002(7), emphasized above. This expresses an intention, in our opinion, to treat HMOs as insurers only in circumstances relating to the stated "purposes."
Tucker's action does not arise from any of the limited purposes for which an HMO is legislatively declared to be an insurer. On this record, and without further analyzing the respective definitions of an insurance policy on the one hand, and an HMO's health care service agreement on the other, we agree with the trial court's implicit conclusion that CCP Art. 76 is not an appropriate basis for establishing venue of this action in Caddo Parish.

Art. 76.1: Action on a contract
Art. 76.1 is of recent vintage, having been enacted by Acts 1991, No. 217:
An action on a contract may be brought in the parish where the contract was executed or the parish where any work or service was performed or was to be performed under the contract.
Before this article was adopted, a plaintiff in an action on a contract other than an insurance policy was required to bring the action in the parish of the defendant's domicile (Art. 42), or in any other parish where the defendant maintained a business office having supervision over the matter sued upon (Art. 77). See, for example, Doucet v. Dental Health Plans Mgmt. Corp., 412 So.2d 1383 (La.1982) (applying Art. 42 to dentist's action against dental health management corporation for breach of professional service agreement) and Hamilton Med. Group v. Ochsner Health Plan, 550 So.2d 290 (La.App. 3d Cir.1989) (applying Art. 77 to action by Lafayette M.D.'s against New Orleans-based HMO with satellite office in Lafayette).
*1056 The trial court agreed with Tucker's contention that Art. 76.1 supports venue in Caddo Parish because at least some of the services to be performed under OHP's group health plan were to be performed in Caddo Parish. Disputing this characterization of the contract, OHP claims it was contractually bound only to provide medical services to plan members or enrollees within the stipulated New Orleans-Baton Rouge service area, the only geographical area in which OHP maintains contracts with health care providers who render professional services to plan members. With respect to the plan's provisions concerning medical expenses incurred outside the service area, which we quote infra, OHP emphasizes it had no obligation to provide medical services, but only to reimburse the enrollee for the stipulated portion of the out-of-area expenses. OHP argues that the reimbursement obligation "is not the equivalent of [an obligation] to perform services in Caddo Parish."
This record does not contain the entire Ochsner Health Plan group health care agreement, but only those portions of the agreement which the parties have deemed pertinent to the venue issue. In quoting from those parts of the agreement in the record, we reproduce the boldface type which appears in the agreement, italicizing selected provisions for our emphasis.
The agreement defines a "covered" expense as one "provided or arranged by OHP or paid for by OHP in accordance with the terms of this Agreement." Art. I, Sec. 1(d). Art. VI, Section 12 of the agreement states:
Emergency Services Provided Outside the OHP Service Area: Medically Necessary Emergency services provided outside the OHP Service Area are Covered, subject to Article VII, Section 1(p), only if the Member notifies OHP within 48 hours of receiving treatment and claims for such services are submitted to OHP within 60 days of the date of service.
Section 13 of Article VI of the agreement states:
Emergency Services Requiring Hospitalization at Non-Participating Provider: If a Member requires hospitalization at a non-Participating Provider pursuant to Sections 11 or 12 of this Article VI, notice must be given to OHP within 48 hours of the hospitalization or as soon as possible and claims for such services must be submitted to OHP within 60 days of the date of service. OHP will pay usual, customary, and reasonable charges to the non-Participating Provider for the Medically Necessary inpatient services described in Section 9 of this Article VI and provided by the non-Participating Provider until the Member can be transferred to a Participating Provider. OHP will pay charges for services rendered by a non-Participating Provider for follow-up care provided subsequent to the Emergency episode only when, in the judgment of the Medical Director, the Member could not have been transferred to the care of a Participating Provider without medically harmful consequences.
An "Emergency Care Guide" apparently furnished to plan members as part of the OHP agreement gives this summary of the out-of-area emergency provisions:
An emergency outside the service area can be treated by going to the appropriate treatment center, doctor's office, clinic or, if necessary, Emergency Room.... Out-of-area care for medical emergencies is covered only until the Member's condition will permit his/her return to the care of an Ochsner physician....
Reasonable charges for covered services will either be reimbursed to you or the medical provider can bill Ochsner Preferred Choice ...
For purposes of the venue exception, OHP does not dispute that Tucker required out-of-area emergency services for the injuries he sustained in the fall. Tucker has alleged compliance with the agreement's time constraints for furnishing OHP with notice of, and claims for, the out-of-area treatment. The agreement clearly obligates OHP to pay for covered out-of-area services in one of two ways: by reimbursing the plan member, or by paying the out-of-area health care provider directly.
In this case, both the plan member and the out-of-area provider are in Caddo Parish. *1057 The agreement clearly contemplates payment outside the service area, whether to the plan member or to the out-of-area health care provider, as one of OHP's contractual obligations or services to its members. This obligation is in addition to OHP's primary obligation to provide medical services with specified health care providers within the service area, in our opinion. Under the assumed circumstances, we can reasonably conclude that at least some of OHP's alleged contractual obligations were to be performed in Caddo Parish, making venue there proper under CCP Art. 76.1. See and compare the relatively liberal construction of Art. 76.1 in other factual contexts in Jordan v. Central Louisiana Electric Co. and McInnis Bros. v. Peoples Water Service, both cited supra; Commercial Nat. Bank v. First Nat. Bank, 603 So.2d 270 (La.App. 2d Cir.1992), writ denied; and Sutton Steel v. Southland Steel, 93-1666 (La.App. 3d Cir. 6/1/94), 640 So.2d 639, writ denied.
In this case, the venue provisions of Art. 42 conflict with one or more of the Arts. 71-77, and no "exclusive" venue article (78-83) applies. Under Art. 45, Tucker had the option to bring his action "in any venue provided by any applicable article." See and compare Blitch Architects v. The Avenue Partnership, 93-1703 (La.App. 4th Cir. 2/11/94), 632 So.2d 850. Because we find Caddo Parish to be a proper venue for Tucker's breach of contract claims against OHP under Art. 76.1, we need not and do not consider whether Tucker's allegations of tortious conduct contained in the petition may also support venue in Caddo Parish under Art. 74.

DECREE
At OHP's cost, the judgment is AFFIRMED.
NOTES
[1] By Acts 1995, No. 1231, the statute was amended to provide that an HMO is considered an insurer for the additional purposes of merger, insurance fraud and the insurance holding company system regulatory law. The amendment took effect September 1, 1995, after this action was filed. We quote and discuss the pre-amendment statutory language in the opinion.