814 So.2d 574 (2001)
Olivia CRAWFORD, Individually, and on Behalf of Others Similarly Situated
v.
BLUE CROSS AND BLUE SHIELD OF LOUISIANA, a/k/a Louisiana Health Service & Indemnity Company.
No. 2000-CA-2026.
Court of Appeal of Louisiana, Fourth Circuit.
December 5, 2001.
*576 Steven J. Lane, Steve Herman, Maury A. Herman, Russ M. Herman, Herman, Herman, Katz & Cotlar, LLP, New Orleans, LA, Counsel for Plaintiff/Appellee.
Coleman D. Ridley, Jr., Richard J. Tyler, Mark W. Mercante, David G. Radlauer, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., New Orleans, LA, Counsel for Defendant/Appellant.
Court composed of Judge JOAN BERNARD ARMSTRONG, Judge STEVEN R. PLOTKIN, Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE, Judge MAX N. TOBIAS, JR.
MICHAEL E. KIRBY, Judge.
Defendant/Appellant, Blue Cross and Blue Shield of Louisiana, suspensively appeals the denial of its venue exception. We reverse the trial court's finding that venue exists in the Parish of Orleans.

STATEMENT OF THE FACTS
Plaintiff, Olivia Crawford, filed the this suit on January 3, 2000 on behalf of herself and others similarly situated to compel Blue Cross to provide medical services based upon a Blue Max Contract. In addition, plaintiff seeks to recover non-disclosed discounts which are alleged by plaintiff to have been negotiated by Blue Cross with medical providers. Because these discounts are not passed on to the plan members, the alleged result is that Ms. Crawford and the other Blue Max plan members are being charged more than twenty percent of the total health care costs incurred in violation of terms of the policy.
Plaintiff resides in St. Tammany Parish, and that is where she developed health problems that brought her to have surgery. Plaintiff alleges that Blue Cross pre-certified Olivia Crawford for inpatient lumbar fusion surgery to treat degenerative scoliosis at Tulane Medical Center in New Orleans, Louisiana. Surgery occurred on October 27, 1999. According to Plaintiff, Ms. Crawford was scheduled to be transferred to an inpatient rehabilitation facility located outside of Orleans Parish, which transfer had been pre-registered and pre-approved. Nevertheless, on the morning of November 4, 1999, Ms. Crawford was informed that Blue Cross had determined that she did not need any more inpatient treatment.
Plaintiff alleges that Ms. Crawford's case worker and a physician at Tulane protested, and Blue Cross agreed to transfer Ms. Crawford to Tulane's rehabilitation center, located in Jefferson Parish. Ms. Crawford was allegedly told that she would likely have to stay there for at least a month while she learned how to take care of herself.
Nevertheless, Blue Cross advised the Tulane Rehabilitation Center that Ms. Crawford would have to be discharged. Ms. Crawford alleges that her physician insisted that she remain at the center until at least Monday, November 15, 1999, because a urinary tract infection had developed which needed to be treated on an inpatient basis. On November 15, 1999, Ms. Crawford was allegedly still suffering from the urinary tract infection, and required assistance for all activities of daily living, ambulation and mobility. Nevertheless, such treatment was denied by Blue Cross, and Ms. Crawford was discharged.
After Ms. Crawford filed this action in the Civil District Court for the Parish of *577 Orleans, Blue Cross timely excepted on the grounds of improper venue. The trial court conducted a hearing and both parties submitted post-argument briefs with exhibits. On May 30, 2000, the trial court rendered Judgment overruling all exceptions.
On June 19, 2000, the trial court denied Blue Cross' Motion for Suspensive Appeal. On July 3, 2000, we ordered the trial court to grant Blue Cross' suspensive appeal and on July 5, 2000, the trial court complied. Blue Cross timely deposited the required security.
Blue Cross assigns several errors to the trial court's ruling on venue. First, the trial court erred by disregarding uncontroverted evidence when it determined that the "facts" justified application of the venue alternatives set forth in La.C.C.P. arts. 74, 76, and 76.1. Second, the trial court erred as a matter of fact when it found that "the likelihood that the illness giving rise to the cause of action occurred in Orleans parish is great enough" to support venue. Third, the trial court erred as a matter of fact when it found that "wrongful conduct occurred in Orleans Parish."

STATEMENT OF THE LAW
"Venue is a question of law and where a legal error interdicts the fact finding process and the record is otherwise complete, an appellate court should then conduct a de novo review of the record." Bloomer v. Louisiana Workers' Compensation Corp., 99-0707, p. 3 (La.App. 1 Cir. 5/12/00), 767 So.2d 712, 714.
Under the general rules of venue, Louisiana Code of Civil Procedure art. 42(2) states that an action against a domestic insurer shall be brought in the parish where its registered office is located. Blue Cross is a non-profit mutual benefit insurance company organized under the laws of the State of Louisiana and maintains a Registered Office in Baton Rouge, Louisiana.
Plaintiff alleges that several exceptions to the general rule apply, to wit: La. C.C.P. arts. 74, 76, and 76.1.
Because the general rule articulated in Article 42 makes venue proper in East Baton Rouge Parish, plaintiff must show that these facts clearly satisfy one of the exceptions, before plaintiff can claim the benefit of that exception. Person v. T.L. James & Co., Inc., 97-2746, p. 4 (La. App. 4 Cir. 5/20/98), 712 So.2d 1050, 1051-52.
In Person, a tort defendant excepted to venue in Orleans Parish on the basis that the accident occurred on a portion of defendant's landfill located in St. Bernard Parish, and submitted three affidavits establishing the accident location. The trial court found venue proper in Orleans based on the municipal address of the landfill. We reversed, finding that the municipal address was not dispositive of the place where the accident occurred on the defendant's property, which was bifurcated by a parish line. More importantly, we found the plaintiffs failure to offer evidence was fatal to his claim that venue exceptions applied:
Although defendant submitted three affidavits to prove the accident occurred in St. Bernard Parish, plaintiff was claiming the benefit of the exception to the general venue rule and therefore had the burden of proving the accident occurred in Orleans Parish. Because plaintiff offered no evidence to establish the precise geographical location of the accident to satisfy his burden, he did not bring himself clearly within the exception provided for by article 74. In view of this, we find the trial judge erred in overruling the defendant's exception of improper venue. *578 Person, at p. 4, 712 So.2d at 1052 (emphasis added).
Like the plaintiff in Person, Ms. Crawford offered no evidence to establish that her illness (or the complication therefrom) occurred in Orleans Parish (art. 76), that her contract was executed or performed in Orleans Parish (art. 76.1), or that injury or damage was sustained in Orleans Parish (art. 74). Plaintiff's failure to present evidence bringing herself "clearly within the exceptions," standing alone, makes the trial court's failure to maintain Blue Cross' exception erroneous.
Ms. Crawford asserts La.C.C.P. art. 76 is applicable. Ms. Crawford seeks to recover benefits provided by a health and accident insurance contract issued by Blue Cross. Health and accident insurance is a particular species of contract for which La.C.C.P. art. 76 provides a specific venue exception: "the parish where the insured is domiciled, or in the parish where the .... illness occurred." Plaintiff argues that the place where "illness occurred" is Orleans Parish.
Plaintiffs Petition alleges that Ms. Crawford is domiciled and resides in St. Tammany Parish. The illness for which she was hospitalized, degenerative scoliosis, necessarily predated her hospitalization at Tulane Medical Center. Indeed, the evidence adduced by Blue Cross established that, prior to entering the hospital for surgery, Ms. Crawford selected a rehabilitation facility in Covington for her postoperative care. Thus, the diagnosis of her condition and prescribed treatment were established before she ever set foot in Orleans Parish to receive treatment. Thus, the illness for which she was hospitalized did not occur in Orleans Parish.
Ms. Crawford did make an unsupported argument that she developed a urinary tract infection while hospitalized. Pretermitting whether a complication secondary to an illness can be "the illness" for purposes of Article 76, Ms. Crawford did not present evidence that this complication occurred in Orleans Parish. She therefore did not meet her burden of demonstrating the availability of this venue exception.
Moreover, neither the Tulane Medical Center "Discharge Summary" nor the Tulane Rehabilitation Center "Patient Admission Assessment Record," completed on November 4, 1999, indicate a primary or secondary diagnosis of urinary tract infection. Neither document lists an antibiotic in the list of medications prescribed for Ms. Crawford on November 4, 1999, the date of her transfer to the Tulane Rehabilitation Center in Jefferson Parish. In other words, Ms. Crawford had neither been diagnosed with, nor was under treatment for a urinary tract infection at the time she transferred from Tulane Medical Center in New Orleans to Tulane Rehabilitation Center in Jefferson Parish. All evidence leads us to the conclusion that the urinary tract infection occurred in the Rehabilitation Center in Jefferson Parish. Thus, even if that complication could be "the illness" for purposes of Article 76, it would permit venue in Jefferson Parish, not Orleans.
Furthermore, Blue Cross submitted evidence in the form of medical records on this point. These records established that Ms. Crawford was discharged from Tulane Medical Center in New Orleans, and admitted to Tulane Rehabilitation Center in Jefferson Parish on November 15, 1999. It was on this day that benefits allegedly were denied.
Ms. Crawford also argued another exception to general venue, under article 76.1. This article provides:
"An action on a contract may be brought in the parish where the contract was *579 executed or the parish where any work or service was performed or was to be performed under the terms of the contract."
LSA-C.C.P. art. 76.1
Ms. Crawford does not allege that her insurance policy was executed by either party in Orleans Parish. Rather, Ms. Crawford asserts that it "should have been, and partially was, performed in Orleans Parish." Ms. Crawford did not present any evidence that Blue Cross "should have," but did not render performance in Orleans Parish. The heart of her complaint is that Blue Cross denied continuing inpatient coverage on November 15, 1999, when all of the evidence shows she was in a rehabilitation facility in Jefferson Parish.
Ms. Crawford does not complain that Blue Cross improperly denied coverage for any aspect of her admission to Tulane Medical Center in New Orleans. The record possibly shows that the alleged nonperformance occurred in Jefferson Parish, viewing "the illness" under art. 76 as being the urinary tract infection.
The insurance policy does not contemplate that Blue Cross will undertake performance of "service or work" in Orleans or Jefferson Parishes. Rather, it merely obligates Blue Cross to pay for covered medically necessary services rendered by health care providers to the insured. Direct payment by Blue Cross for medical services rendered by Tulane Medical Center in Orleans or Jefferson Parishes does not constitute "any work or service....under the terms of the contract" for purposes of Article 76.1. Barham v. Richard, 97-0186 (La.App. 4 Cir. 4/9/97), 692 So.2d 1357, 1359.
In Barham, we ruled that "work or service" under Article 76.1 does not include all forms of performance and rejected the argument that simple "payment" falls within the ambit of that article. We stated:
"Work or service" are forms of contractual performance, but this does not mean that "work or service" includes all forms of performance.
. . . .
Had it been the intention of the legislature when it enacted LSA-C.C.P. art. 76.1 to include all forms of performance within the phrase "work or service" it would have so easy for the article to have provided for venue using straightforward, non-technical language such as, "where the contract was performed," or "where the object of the contract was performed," that we must conclude that the failure to do so was deliberate. Both of these phrases are broad enough to encompass all forms of performance, including payment on a promissory note, and are simple and straightforward enough that the fact that the legislature chose instead to adopt the phrase "work or service" cannot be seen as accidental.
We do not believe that "work or service" was intended to encompass an act as insubstantial as mailing a check to a certain address in payment of a promissory note.
692 So.2d at 1359-60.
Here, there is no evidence that Blue Cross even mailed a check to Tulane Medical Center located in Orleans Parish.
Ms. Crawford originally alleged that she purchased a "Blue Max Contract" or "policy" to provide insurance, indemnity, or other provisions for medical care. In response to Blue Cross' venue exception, she asserted that her claim was one under a "managed care contract," and not an insurance policy.
The term "managed care plan" is defined in La. R.S. 40:2207(c)(2) as "a plan *580 operated by a managed care organization which provides for the financing and delivery of health care and treatment services to individuals enrolled in such plan through its own employed health care providers or contracting with selected specific providers that conform to explicit selection standards or both." The phrase "managed care organization" is defined in La. R.S. 40:2207(c)(1) to be "a licensed insurance company ... [or] health maintenance organization ... which operates a managed care plan. A managed care entity may include, but is not limited to a preferred provider organization, health maintenance organization...."
Ms. Crawford cites Tucker v. Ochsner Health Plan, 28,318 (La.App. 2 Cir. 5/8/96), 674 So.2d 1052 in support of her argument. We believe this Second Circuit case is distinguishable because it involved a health maintenance organization (HMO), not an insurer. In Tucker, supra, there was no dispute that the defendant was a health maintenance organization. The Second Circuit correctly noted that pursuant to The Health Maintenance Organization Act, La. R.S. 22:2201 et seq. an HMO is not considered an insurer except for the purposes of liquidation. 28,318 (La.App. 2 Cir.) at 4, 674 So.2d at 1055.
Even in Ms. Crawford's petition she alleges that the "`Blue Max' insurance contract," provides "insurance, indemnity, and other provisions for medical care." LSA R.S. 22:5(9)(a) defines "insurance" as "a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies." The Blue Max contract is a traditional insurance policy where the benefit is an indemnity payment. Indeed the "Blue Max" Schedule of Benefits shows that the benefits are monetary payments. This distinguishes Blue Cross from an HMO where the benefit or object of the contract is medical treatment.
The fact that the Blue Max policy may be a managed care plan or preferred provider organization does not mean that it does not qualify as an insurance contract since as noted above, licensed insurance companies pursuant to La. R.S. 40:2207(c) may offer managed care plans or preferred provider organizations.
Nevertheless, the crux of this Second Circuit case, Tucker, is that the contract contemplated "payment" as a contractual obligation, and "payment," coupled with services provided in the same parish, was sufficient to make venue proper in that same parish under Article 76.1. We distinguish this case based upon the difference in the object of an HMO contract and that of an insurance contract, and we choose to follow our own case law, as opposed to that of another circuit.
Thus, following our case law as found in Barham, we do not find an alleged unsubstantiated payment alone sufficient to justify venue in the parish where the payment was made. Even when this alleged payment is coupled with a surgery completed in Orleans Parishthat was not specifically contemplated in the contractit is not sufficient to constitute venue under Article 76.1 because if this were the case, anyone who had an action against a health care insurer could obtain venue in a distant parish simply by making a visit to a doctor located there without more. The bases of Ms. Crawford's action are completely unrelated to Orleans Parish. She has no complaint that is associated with an event that occurred in Orleans Parish. The alleged denial of coverage, that Blue Cross is accused of under an action on contract, occurred in Jefferson Parish. It was in Jefferson that Ms. Crawford was told that Blue Cross would no longer pay for her rehabilitation. It was not in Orleans Parish *581 where decisions were made to allegedly violate the terms of the Blue Max contract. In sum, any event that occurred in Orleans Parish is not, nor has ever been, germane to the contractual breach, allegations or complaints found in Ms. Crawford's Petition. We do not believe that the random location of these unrelated and insubstantial acts are what the Legislature intended as "work or service" as used in LSA C.C.P. art. 76.1. Thus, Ms. Crawford does not meet the requisites for this exception to the general venue rule.
La.C.C.P. art. 74 provides in pertinent part that "[a]n action for the recovery of damages for an offense or quasi offense may be brought in the parish where the wrongful conduct occurred, or in the parish where the damages were sustained." The trial court found that Article 74 venue was available because Ms. Crawford, "alleged causes of actions [sic] in tort as well as contracts, and that venue is appropriate because the wrongful conduct occurred in Orleans Parish, where a substantial amount of the damages were sustained."
We find this to be clearly erroneous because Ms. Crawford failed to present any evidence that wrongful conduct occurred in Orleans Parish or that damages were sustained there. The evidence in the record points to the fact that the alleged wrongful Conduct occurred in Jefferson Parish, not Orleans. There is no evidence upon which a reasonable trier of fact could find that Orleans is the place of wrongful conduct.
With all due respect, the dissent is incorrect in concluding that the denial of an exception of venue is a non-appealable judgment.
La. C.C.P. article 2083, entitled "Judgments appealable," states:
An appeal may be taken from a final judgment rendered in causes in which appeals are given by law whether rendered after hearing or by default, from an interlocutory judgment which may cause irreparable injury ...
[Emphasis added]
In Danny Weaver Logging, Inc. v. Norwel Equipment Co., 33,793 (La.App. 2 Cir. 8/23/00) 766 So.2d 701, our brethren state:
The Louisiana Supreme Court has indicated that an interlocutory ruling denying an exception of venue is appealable either by ordinary appeal under La. C.C.P. art. 2083 or through the supervisory writ process pursuant to La. C.C.P. art. 2201. Chambers v. LeBlanc, 598 So.2d 337 (La.1992) and Herlitz Construction Co. Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878, note 1 (La.1981). The error of a trial court in denying a proper venue exception ... cannot "as a practical matter be corrected on appeal after final judgment." Herlitz, supra.

Danny Weaver Logging, supra at 703-704.
Based on the La.Code of Civil Procedure and the cited case law, we find that the trial court's improper denial of the exception of venue is an appealable judgment.

CONCLUSION
The judgment overruling the exception of venue is appealable pursuant to La. C.C.P. art. 2083 as an interlocutory judgment which may cause irreparable harm. Ms. Crawford failed to present any evidence to support her allegation that venue is proper in Orleans Parish. It was erroneous for the trial court to find venue to be proper in Orleans Parish for her individual action. Our finding that Ms. Crawford, as lead plaintiff, lacks individual venue in Orleans Parish, implies that Orleans Parish is not a proper venue for the class action. Accordingly, we reverse the trial court's May 30, 2000 Judgment overruling Blue Cross' venue exceptions and remand so *582 that the case may be transferred to a proper venue.
REVERSED AND REMANDED.
ARMSTRONG, J., dissents with reasons.
TOBIAS, J., concurs with reasons.
ARMSTRONG, J., dissenting with reasons.
I respectfully dissent. I believe that the trial court correctly concluded that the Blue Max policy was a contract and that work or services were provided in Orleans Parish pursuant to that contract. The Blue Max policy is not a traditional insurance policy, whereby Blue Cross' role would be limited to making indemnity payments. Instead, it is a PPO policy whereby Blue Cross contracts directly with health care providers ("Preferred Network Care Providers") including, in the present case, Tulane Medical Center in Orleans Parish where the plaintiff's surgery took place. Thus, Blue Cross provided work or services, specifically medical services, in Orleans Parish.
The fact that a PPO policy may be offered by an insurance company does not mean that the PPO policy is thereby transformed into an insurance policy. Whether a particular policy is a traditional insurance policy, or is instead a PPO policy, is determined by the terms of the policy. If Blue Cross were to sign a lease for office space, we would not hold that the lease is transformed into an insurance policy because Blue Cross is an insurance company. If a policy provides indemnity benefits, it is an insurance policy. If the policy, instead, provides medical care, it is a contract for work or services. Thus, Article 76.1, rather than Article 76, is applicable to the present case. The crux of the matter is that Blue Cross contracted, not to make payments in Orleans Parish (as in Barham), but to provide medical services in Orleans Parish. Further, Article 76.1 is not limited to construction contracts and, if it were so limited, then it would undoubtedly say so. In fact, Act 217 of 1991 says that one of its purposes is to "provide venue in actions on contracts." It does not say that its purpose is to "provide venue on construction contacts."
Also, as the trial court judgment merely overruled Blue Cross' venue exception, it did not decide the plaintiffs claims against Blue Cross. Thus, there is no immediately appealable judgment and this appeal should be dismissed without prejudice. Article 1915(B).
The Supreme Court's Chambers and Herlitz decisions do not, as the Second Circuit's Danny Weaver Logging decision seems to assume, hold that a denial of a venue exception is appealable under Article 2083. Instead, both Chambers and Herlitz were proceedings on applications for supervisory writs. The present proceeding is not a supervisory writ application and we do not convert premature appeals to supervisory writ proceedings. E.G., Narcise v. Jo Ellen Smith Hospital, 98-2417 (La.App. 4 Cir. 3/10/99), 729 So.2d 748.
TOBIAS, J., concurring.
Article III, § 15(A) of the Louisiana Constitution provides that a bill "shall be confined to one object .... [and] shall contain a brief title indicative of its object."
La. C.C.P. art. 76.1 was enacted by Act 217 of 1991, which act reads in its entirety as follows:
To enact R.S. 9:2779 and Code of Civil Procedure Art. 76.1, relative to contracts; to declare public policy regarding clauses in construction contracts, subcontracts, and purchase orders on public and private works relating to the *583 choice of laws governing their interpretation or to venue for resolving disputes arising thereunder; to provide for the invalidity of certain contract provisions as contrary to public policy; to provide exceptions; to provide venue in actions on contracts; and to provide for related matters.
Be it enacted by the Legislature of Louisiana:
Section 1. R.S. 9:2779 is hereby enacted to read as follows:
§ 2779. Construction contracts, subcontracts, and purchase orders; certain provisions invalid
A. The legislature finds that, with respect to construction contracts, subcontracts, and purchase orders for public and private work projects, when one of the parties is domiciled in Louisiana, and the work to be done and the equipment and materials to be supplied involve construction projects in this state, provisions in such agreements requiring disputes arising thereunder to be resolved in a forum outside of this state or requiring their interpretation to be governed by the laws of another jurisdiction are inequitable and against the public policy of this state.
B. The legislature hereby declares null and void and unenforceable as against public policy any provision in a contract, subcontract, or purchase order, as described in Subsection A, which either:
(1) Requires a suit or arbitration proceeding to be brought in a forum or jurisdiction outside of this state; rather, such actions or proceedings may be pursued in accordance with the Louisiana Code of Civil Procedure or other laws of this state governing similar actions.
(2) Requires interpretation of the agreement according to the laws of another jurisdiction.
C. The provisions of this Section apply to contracts, subcontracts, and purchase orders, as described in Subsection A, entered into on or after the effective date of this Act.
D. Notwithstanding any other provisions of law to the contrary, the provisions of this Section shall not apply to negotiated labor contracts.
Section 2. Code of Civil Procedure Art. 76.1 is hereby enacted to read as follows:
Art. 76.1. Action on contract
An action on a contract may be brought in the parish where the contract was executed or the parish where any work or service was performed or was to be performed under the terms of the contract.
It is apparent, in view of the title to Act 217, that article 76.1 was intended to apply to construction contracts and not all contracts of every nature.
Whether one characterizes the agreement between Blue Cross and Ms. Crawford as a contract or health insurance policy is a distinction without a difference. A health insurance policy is contract of insurance between the insurer and the insured. A specific law governs over a general law. La. C.C.P. art. 76 is specific with respect to claims on health insurance policies. Venue for health insurance policy issues is controlled by La. C.C.P. arts. 42 and 76. Accordingly, in this case, venue is proper where Blue Cross has its registered office, where Ms. Crawford is domiciled, or where Ms. Crawford's illness occurred. Orleans Parish is not any one of those venues.