United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 8, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**NO. 01-30922**

_____

**JULIO C. ARANA,**

**Plaintiff-Appellee,**

**versus**

**OCHSNER HEALTH PLAN,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court
for the Eastern District of Louisiana**
_____

Before JONES, EMILIO M. GARZA, Circuit Judges, and ELLISON,
District Judge.[*]

EDITH H. JONES, Circuit Judge:

This case was remanded to "the panel" pursuant to a decision of the en banc court that we have federal jurisdiction. See Arana v. Ochsner Health Plan, Inc., 302 F.3d 462, 470-74 (5th Cir. 2002), rev'd en banc, 338 F.3d 433 (5th Cir. 2003). We now hold that because Arana's claim against Ochsner Health Plan ("OHP") fails as a matter of Louisiana law, no question of conflict with federal ERISA law exists.

---

[*] District Judge of the Southern District of Texas, sitting by designation.

## I.  BACKGROUND

On July 5, 1998, Julio Arana ("Arana") suffered serious injuries when the 1995 Nissan Pathfinder he was driving was struck by a 1996 Ford Crown Victoria.  At the time of the accident, and all other relevant times, Arana was a dependent beneficiary of an employee benefit plan established by his mother's employer, LeCler Printing Company.  Ochsner Health Plan, Inc. ("OHP") provided health benefits as an HMO under the LeCler benefit plan.  Following the accident, OHP paid approximately $180,000 in health benefits for treatment of Arana's accident-related injuries.  A variety of other insurance policies also provided coverage for the accident, including a State Farm liability policy covering the Crown Victoria, an Allstate liability policy carried by the non-owner operator of the Crown Victoria, a Fireman's Fund uninsured motorist policy issued on the Pathfinder and an excess uninsured motorist policy underwritten by United Fire.  Each of these policies paid out substantial benefits to Arana.  State Farm and Allstate paid a total of $150,000 under the terms of their respective policies.  In addition, Fireman's Fund and United Fire paid a total of $962,500 under settlement agreements reached after Arana filed a federal tort action in the Eastern District of Louisiana.  Of the amount paid by United Fire, $150,000 is held in a trust account maintained by Arana's lawyer pursuant to the settlement agreement.

On November 2, 1999, while the federal tort action was pending, OHP wrote to Arana's mother and United Fire notifying both that OHP claimed a contractual right to recover the health benefits it had paid on Arana's behalf. Arana sued in state court for a declaratory judgment that Louisiana law barred OHP's claim for subrogation to his insurance benefits. OHP removed Arana's lawsuit to the Eastern District of Louisiana on the grounds that the Employee Retirement Income Security Act ("ERISA") preempted Arana's state law claims. The district court granted summary judgment for Arana holding that federal subject matter jurisdiction existed because Arana's claim was brought pursuant to ERISA, that Louisiana state law provided the rule of decision for the case under ERISA's savings clause, and that Louisiana state law barred OHP's claim for subrogation. See Arana v. Ochsner Health Plan, Inc., 134 F. Supp. 2d 783, 787-89 (E.D. La. 2001). On appeal, a panel of this court held that ERISA did not preempt Louisiana state law and therefore the federal courts had no subject matter jurisdiction over Arana's state law claims. Following rehearing en banc, we held that Arana's claim falls within federal jurisdiction pursuant to ERISA § 502. See Arana v. Ochsner Health Plan, Inc., 338 F.3d 433, 437-39 (5th Cir. 2003) (en banc). The en banc court remanded the case to this panel for consideration of the merits of Arana's claim. Id. at 440.

## II.  DISCUSSION

### A.  Standard of Review

We review a district court's grant of summary judgment de novo.  See Price v. Fed. Express Corp., 283 F.3d 715, 719 (5th Cir. 2002).  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."  FED. R. CIV. P. 56(c).  When a district court applies state law in ruling on a summary judgment motion, we review the district court's application of state law de novo.  See Swearingen v. Owens-Corning Fiberglas Corp., 968 F.2d 559, 561 (5th Cir. 1992).

The only issue we consider is the viability of Arana's claim under Louisiana law.  Only if Arana had stated a cognizable state law claim would it be necessary to determine whether ERISA preempts state law.

### B.  Subrogation of Insurance Benefits Under Louisiana Law

Arana contends that Louisiana law prohibits OHP from subrogating to the settlement proceeds that Arana received from other insurers.  His claim depends on the proper application of LA. REV. STAT. § 22:663,[1] which states:

---

[1]     Arana has filed a motion requesting that this court certify the question of the proper application of § 22:663 to the Louisiana Supreme Court. This request, which follows briefing and argument to the original Fifth Circuit panel, the en banc court, and this panel, is denied as untimely.

4

>  Notwithstanding any other provisions in this title to the contrary, no group policy of accident, health or hospitalization insurance, or of any group combination of these coverages, shall be issued by any insurer doing business in this state which by the terms of such policy group contract excludes or reduces the payment of benefits to or on behalf of an insured by reason of the fact that benefits have been paid under any other individually underwritten contract or plan of insurance for the same claim determination period. Any group policy provision in violation of this section shall be invalid.

LA. REV. STAT. § 22:663 (West 1995 and Supp. 2003).

### 1. Ochsner's Status as a Health Maintenance Organization

To gain the benefit of § 22:663, Arana must first demonstrate that it covers OHP and the health benefits OHP provides to HMO plan beneficiaries like Arana. The statute regulates group accident, health and hospitalization insurance policies that are issued by "any insurer doing business in this state." LA. REV. STAT. § 22:663. According to the Louisiana Insurance Code, an "insurer" includes "every person engaged in the business of making contracts of insurance, other than a fraternal benefit society." LA. REV. STAT. § 22:5(10). OHP is a health maintenance organization, however, not an insurer, and Louisiana law has carefully identified the Insurance Code provisions that apply to HMOs. Thus, "[a] health maintenance organization is an insurer but only for the purposes enumerated in R.S. 22:2002(7)." Id. (emphasis added). Section 22:2002(7) of the Insurance Code, in turn, deems

>  [a] health maintenance organization . . . to be an insurer for the purposes of R.S. 22:213.6 and 213.7, Part XVI, comprised of R.S. 22:731 through 774, Part XXI-A,

5

> comprised of R.S. 22:1001 through 1015, and Part XXVI-B, comprised of R.S. 22:1241 through 1247.1, of Chapter 1 of this title,

and states that "[a] health maintenance organization <u>shall not</u> be considered an insurer <u>for any other purpose</u>." LA. REV. STAT. 22:2002(7) (emphasis added). Because this list of provisions omits Part XIV, which encompasses § 22:663, OHP is not an insurer subject to the provisions of § 22:663. This conclusion comports with prior decisions of the Louisiana state courts which have found that the Louisiana legislature intended to treat HMOs as insurers "only for selective and limited purposes." <u>Tucker v. Ochsner Health Plan</u>, 674, So. 2d 1052, 1055 (La. App. 2 Cir. 5/8/96) (holding that an HMO is not an insurance company for purposes of a statute granting special venue provisions for insurance claims); <u>Crawford v. Blue Cross and Blue Shield of Louisiana</u>, 814 So.2d 574, 580 (La. App. 4 Cir. 2001) (declining to follow <u>Tucker</u> on the grounds that Blue Cross was an insurer rather than an HMO).[2]

---

[2] Arana argues that OHP is subject to § 22:663 by virtue of LA. REV. STAT. § 22:2006(7), enacted in 1986, which allows HMOs to "coordinate benefits, subrogate to third party funds, and engage in the assignment of claims to the extent that insurers are permitted to do so by the laws of this state." LA. REV. STAT. § 22:2006(7). This argument is unavailing for two reasons. First, the Louisiana Insurance Code is very specific in indicating that HMOs are not to be considered insurers except for the limited purposes enumerated in § 22:2002(7). <u>See</u> LA. REV. STAT. § 22:5(10); LA. REV. STAT. § 22:2002(7). In the absence of specific language adding § 22:663 to the list of limited purposes, Arana must present a compelling reason why some combination of § 22:2006(7) and § 22:663 should serve as an exception to this general rule. No such compelling argument has been presented and the lack of any Louisiana decision holding HMOs to be insurers for § 22:663 purposes argues against such an innovation by this court. Second, even if § 22:2206(7) and § 22:663 were to combine in the manner Arana suggests, because we find, <u>infra</u>, that § 22:663 addresses only certain instances of the coordination of benefits and not subrogation to third party funds, such an approach does not affect OHP's ability to subrogate pursuant to its insurance contract and Louisiana law.

Arana nonetheless argues that OHP is subject to § 22:663 because § 22:232(13) defines "health and accident insurance" to include "coverages provided by health maintenance organizations" and therefore this provision functions as an additional exception to the general bar on treating HMOs as insurers under Louisiana law, thus making § 22:663 applicable to OHP. The problem with Arana's argument is that the scope of the definition he cites is limited by a parallel provision within the same code section. Section 22:232(19) makes clear that HMOs are insurers within that code section, but only "for the purposes of this Part." See LA. REV. STAT. § 22:232(13); LA. REV. STAT. § 22:232(19) (emphasis added). The "Part" referred to in § 22:232 is Part VI-A, which specifically applies only to the state-backed Louisiana Health Plan. Thus, while Arana is correct that the combination of § 22:232(13) and § 22:232(19) functions as an additional exception to the general bar against treating HMOs as insurers under Louisiana law, it does not allow HMOs to be treated as insurers under § 22:663, which is contained in Part XIV - a separate section of the Louisiana Insurance Code which is unaffected by the definitions contained in § 22:232.

### 2. Subrogation Versus Coordination of Benefits

But even if the OHP coverage were subject to the restrictions embodied in § 22:663, Arana would not prevail for a very simple reason. While this statute restricts the coordination of

benefits, it does not affect <u>subrogation</u> to the insurance benefits paid to Arana under the settlement agreements. Section 22:663, as noted, forbids group health insurance policies to "exclude[] or reduce[] the payment of benefits to or on behalf of an insured by reason of the fact that benefits have been paid under any other individually underwritten contract or plan of insurance." LA. REV. STAT. § 22:663. On the other hand, the Louisiana Insurance Code expressly allows HMOs to "coordinate benefits, subrogate to third party funds, and engage in the assignment of claims to the extent that insurers are permitted to do so by the laws of this state." LA. REV. STAT. § 22:2006(7) (emphasis added). These two terms — coordination and subrogation — are legally and functionally distinct.

First, the Louisiana state legislature evidently under-stood coordination of benefits and subrogation to be separate and distinct concepts. Any other reading of the Insurance Code would have to presume, contrary to the canon of construction, that the legislature was redundant in defining the powers of HMOs in § 22:2006(7). <u>See</u> <u>United States v. Reeves</u>, 752 F.3d 995, 999 (5th Cir. 1985) ("A statute should be read to avoid rendering its language redundant if reasonably possible."); <u>ABL Mgmt., Inc. v. Bd. of Supervisors</u>, 773 So. 2d 131, 135 (La. 2000) ("[I]t will not be presumed that the Legislature inserted idle, meaningless or superfluous language in the statute or that it intended for any

8

part or provision of the statute to be meaningless, redundant or useless.").

In addition, Louisiana Department of Insurance regulations treat subrogation to third party funds and the coordination of benefits as different concepts.  See LA. ADMIN. CODE 37:XIII.313 ("COB [Coordination Of Benefits] Differs from Subrogation. Provisions for one may be included in health care benefits contracts without compelling the inclusion or exclusion of the other.").[3]  The regulations go on to define coordination of benefits as "establishing an order in which plans pay their claims, and permitting secondary plans to reduce their benefits so that the combined benefits of all plans do not exceed total allowable expenses."  LA. ADMIN. CODE 37:XIII.303.  The reduction in benefits described as coordination of benefits parallels the language used in § 22:663 prohibiting policy provisions that "exclude[] or reduce[] the payment of benefits to or on behalf of an insured." LA. REV. STAT. § 22:663.  Coordination of benefits occurs where a reduction of benefits takes place up front as an insurance company limits the benefits it pays on the basis of an insured's additional or third-party coverage.  In contrast, the Louisiana Civil Code defines subrogation as "the <u>substitution</u> of one person to the

_____

[3]      Arana correctly argues that the distinction drawn by the Department of Insurance between subrogation and coordination of benefits in this regulation is not directly applicable to § 22:663 because the regulation relates only to the relationship between group plans and not the relationship between group and individual plans, which is the focus of § 22:663.  However, the regulation does demonstrate that the primary regulator of insurance in Louisiana distinguishes between subrogation and the coordination of benefits.

rights of another." LA. CIV. CODE, Art. 1825 (emphasis added). Subrogation generally takes place after insurance proceeds have been paid out and the insurance company, substituting itself in place of the insured, seeks reimbursement from a third-party. See Lee R. Russ, Couch on Insurance § 222:5 (3d ed. 2000) (defining subrogation generally).

That § 22:663 limits coordination of benefits and not subrogation comports with the interpretation of this statute by Louisiana courts. See Peters v. Prudential Ins. Co. of America, 511 So. 2d 37, 39 (La. App. 3 Cir. 1987) ("The legislature was quite clear in its intent to prohibit the coordination of benefits [in § 22:663] where a group policy and an individually underwritten policy cover the same insured."). This Court has also referred to § 22:663 as a "coordination of benefits limitation." Nolan v. Golden Rule Ins. Co., 191 F.3d 990, 993 (5th Cir. 1999). In addition, even though § 22:663 was enacted in 1972, the Louisiana state courts have consistently held that health plans may subrogate to third-party funds. See, e.g., Barreca v. Cobb, 668 So.2d 1129, 1131-32 (La. 1996); Brister v. Blue Cross and Blue Shield of Florida, Inc., 562 So.2d 1040, 1041-46 (La. App. 3 Cir. 1990). It strains credulity to suggest that § 22:663 was designed to allow insured parties to receive the substantial windfall that could result from a bar against subrogation, but that not one reported decision supports this proposition in the more than 30 years that this statute has been on the books.

10

In this case, the subrogation provision contained in the OHP policy allows OHP to succeed to Arana's right to the insurance proceeds paid by other insurance companies. Subrogation does not reduce the benefits OHP furnished to Arana - Arana has collected the full amount he was entitled to under the OHP policy. Should the Louisiana legislature wish to prohibit subrogation as between group and individually underwritten policies, in the same manner that it has prohibited the coordination of benefits, it is free to do so, but the plain language of § 22:663 does not allow this Court to expand the reach of the statute.

## CONCLUSION

For the reasons stated above, OHP is not an "insurer" subject to § 22:663, and § 22:663 does not in any event prevent subrogation. Arana has no claim under Louisiana law.

The judgment of the district court is **REVERSED.**